UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HAARSLEV, INC, <br><br>　　Plaintiff, <br><br>v. <br><br>JEFF MUIR, <br><br>*and* <br><br>JLM MANAGEMENT, LLC <br><br>　　Defendants. | Case No. 4:24-cv-00278-AKB <br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Haarslev, Inc. (Haarslev) brings this action against Defendants Jeff Muir (Muir) and JLM Management, LLC (JLM) and asserts claims for tortious inference with business expectancy, tortious inference with contract, civil conspiracy, and unjust enrichment. (Dkt. 1). Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (Dkt. 14). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed, the Court grants Defendants' motion to dismiss but allows Haarslev leave to amend.

I.   BACKGROUND

Haarslev designs, manufactures, sells, and installs equipment for food, food by-products, and pet food industries. (Dkt. 1 at ¶ A.1). Haarslev employed Michael Chapple (Chapple) as a

MEMORANDUM DECISION AND ORDER - 1

sales and project engineer in Kansas. Chapple served as the project manager on the DemKota Project, a manufacturing and installation project in South Dakota. (*Id.* at ¶¶ A.2-3). Chapple also worked on another project in Augusta, Georgia, known as the FPL Foods project. (*Id.* at ¶ A.20).

JLM provides consulting and management services, which includes scheduling, procuring and delivering specialized parts, assisting with assembly at fabricators' facilities, arranging shipping, and communicating with customers for the installation of equipment at construction sites. JLM performs its work at its principal place of business in Burley, Idaho, at fabrication facilities in Idaho, and on location at construction sites in other states such as South Dakota and Georgia. Muir is JLM's sole member and owner. (Dkt. 14-1 at p. 2).

Before working for Haarslev, Chapple worked in Idaho and formed a connection with Muir. (Dkt. 1 at ¶ A.4). According to Haarslev, Chapple and Muir knew each other through Muir's employment at JJC Fabrication and Mine Maintenance (JJC) and Christensen Machine, Inc. (CMI). (*Id.* at ¶ A.6). In March 2022, CMI terminated Muir's employment, and Muir formed JLM. Chapple—allegedly skirting proper channels—"conspired" with Muir to have JLM approved to replace Haarslev's supplier, JJC. (*Id.* at ¶¶ A.11-13).

After approving JLM as a supplier, Chapple directed JLM to place large orders through another supplier, Industrial Metal Enterprises, LLC ("IME"), which Chapple had engaged prior to JLM's formation to provide materials and equipment for the DemKota and FPL Foods projects, "because on large orders Haarslev would have to do background checks." (Dkt. ¶ A.18). On June 24, 2033, Muir emailed IME, telling IME it would be given a $495,000 purchase order for screw conveyors on the FPL Foods project and further instructing IME to pay Muir 6 percent of its invoices. (*Id.* at ¶ A.21). Chapple was copied on the email, and he was instructed to increase the $495,000 purchase order by 6 percent to accommodate the payment to Muir. (*Id.* at ¶ A.22).

MEMORANDUM DECISION AND ORDER - 2

Similarly, Chapple directed IME to increase its invoices to Haarslev on the DemKota project by an additional 10 percent and pay part of the money to JLM and Muir. (*Id.* at ¶ B.29). IME's invoices, which Chapple approved for Haarslev, did not disclose the 10 percent mark-up. (*Id.* at ¶ B.30).

Haarslev alleges the additional the 6 percent invoiced on the FPL Foods project and 10 percent invoiced on the DemKota project "were not paid in exchange for any services provided by Muir" (*Id.* at ¶ B.33); "were not reasonably necessary for the completion of IME's work" (*Id.* at ¶ B.39); and instead "were improper kickbacks" (*Id.* at B.40). On the DemKota project, Haarslev alleges JLM and Muir received $128,000. (*Id.* at ¶ B.39). On the FPL Foods project, Haarslev alleges JLM and Muir received $29,746.23. (*Id.* at ¶ B.42).

On June 12, 2024, Haarslev filed this action against Muir and JLM, asserting clams for tortious inference with business expectancy, tortious inference with contract, civil conspiracy, and unjust enrichment. Defendants now move to dismiss all Haarslev's claims.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. *Id*. Determining whether a complaint states a plausible claim for relief is a context-specific task requiring the court to draw on its judicial experience and common sense. *Id*.

**MEMORANDUM DECISION AND ORDER - 3**

Under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. To survive a Rule 12(b)(6) motion to dismiss, the non-conclusory factual allegations, and reasonable inferences from those allegations, must state a claim to relief that is plausible on its face. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether it "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

### III.  ANALYSIS

**A.     Tortious Interference with Business Expectancy**

In Count I, Haarslev alleges Muir and JLM interfered with its prospective business expectancy with its customers on the DemKota and FPL Foods projects and with its vendors which provide labor and materials for its North American operation by conspiring with Chapple and IME to overcharge Haarslev on those projects for Muir and JLM's financial gain. (Dkt. 1 at ¶¶ 50-58).

To state a claim for intentional interference with a prospective business expectancy, Haarslev must plead facts showing: "(1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted." *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081-82 (2010)

To establish intentional interference, Haarslev may offer proof that either: "(1) the defendant had an improper objective or purpose to harm the plaintiff; or (2) the defendant used a wrongful means to cause injury to the prospective business relationship." *Id.* (quoting *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 861 (1991). "The mere pursuit of one's own business purposes is not sufficient to support an inference of an improper motive to harm the plaintiff." *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 305 P.3d 499, 509 (Idaho 2013).

Haarslev alleges that it had a continuing business relationship with its customers on the DemKota and FPL Foods projects and "with its vendors that provide labor and materials for its North American operations." (Dkt. 1 at ¶ 52). Haarslev further alleges that Muir and JLM knew of this expectation but "intentionally disrupted" those relationships, resulting in "Haarslev's credibility" being "called into question by its customers on the DemKota project and the FPL Foods project" and causing "damage to Haarslev's reputation in the market with these customers and others." (*Id.* at ¶¶ C.46-47). Haarslev, however, alleges no facts specifying any valid business expectancy that was terminated as a result of Muir and JLM's acts.

Vague and conclusory allegations that Muir and JLM somehow damaged Haarslev's "credibility" or "reputation" with its customers do not state a claim for tortious interference with prospective economic advantage; rather, Haarslev must cite facts giving rise to the inference that

MEMORANDUM DECISION AND ORDER - 5

a valid economic expectancy existed; such expectancy was terminated; or Muir and JLM "intentionally interfered to induce the termination of the expectancy and did so by some measure beyond the fact of the interference itself." *Syringa Networks*, 305 P.3d at 509. Haarslev alleges no such facts. Instead, Haarslev merely parrots the elements for a claim of tortious interference of business expectancy, supported by nothing more than conclusory statements "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680-81 (citing *Twombly*, 550 U.S. at 555).

As the Supreme Court has made clear, such "bare assertions," which "amount to nothing more than a formulaic recitation of the elements," do not suffice to defeat a motion to dismiss. *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Without more detailed factual allegations alleging the existence of a valid business expectancy, that the expectancy was terminated, or that Defendants' intentionally wrongful acts induced the termination of the expectancy, Haarslev fails to state a claim for tortious interference with business expectancy. Thus, the Court dismisses this claim. *See Moss*, 572 F.3d at 969.

**B.    Tortious Interference with Contract**

Haarslev's Count II alleging tortious interference with contract similarly fails to state a claim and must be dismissed. In Idaho, a claim for tortious interference with contract has four elements: "(1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach." *Wesco*, 243 P.3d at 1083 (quoting *Bybee v. Isaac*, 178 P.3d 616, 624 (2008)).

For liability to arise from intentional interference with another's performance of a contract, such interference must be improper. *Tricore Invs., LLC v. Est. of Warren Through Warren*, 485 P.3d 92, 115 (2021). "In determining whether the interference is improper, consideration is given

MEMORANDUM DECISION AND ORDER - 6

to these factors: 1) the nature of the actor's conduct; 2) the actor's motive; 3) the interests of the other with which the actor's conduct interferes; 4) the interest sought to be advanced by the actor; 5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; 6) the proximity or remoteness of the actor's conduct to the interference; and 7) the relations between the parties." *Id.* at 115-16.

As with its claim for tortious interference with business expectancy, Haarslev merely states, in conclusory fashion, that "Defendants were aware of these contracts [with FPL Foods and DemKota]" (Dkt. 1 at ¶ 62), and "Defendants' actions caused the breach of Haarslev's contracts with FPL Foods and DemKota." (*Id.* at ¶ 63). The complaint does not include allegations indicating how such contracts were breached or how Defendants intentionally interfered with these contracts, causing a breach. Because Haarslev fails to allege facts to state a plausible claim for intentional interference with contracts, and instead relies on "threadbare recitals of a cause of action," *Iqbal*, 556 U.S. at 678, the Court dismisses Count II.

C.   **Civil Conspiracy**

Haarslev's Count III is for civil conspiracy. "A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters v. Maile*, 64 P.3d 317, 321 (Idaho 2003). "A civil conspiracy is not, on its own, a claim for relief." *Tricore*, 485 P.3d at 121 (citing *McPheters*, 64 P.3d at 321). "Rather, a civil conspiracy 'is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself.'" *Id.* (quoting *McPheters*, 64 P.3d at 321). "Conspiracy is only material for the purpose of 'making all of the defendants liable for each individual act of the other defendants, if the conspiracy is established.'" *Id.* (quoting *Dahlquist v. Mattson*, 233 P. 883, 887 (Idaho 1925)).

**MEMORANDUM DECISION AND ORDER - 7**

In this case, because Haarslev has failed to state a claim for intentional interference with business expectancy or intentional interference with contract, the Court finds Haarslev also fails to state a claim for civil conspiracy and dismisses Count III.

### D.     Unjust Enrichment

Haarslev's Count IV is for unjust enrichment. To state a claim for unjust enrichment in Idaho, the plaintiff must allege "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Lincoln Land Co., LLC v. LP Broadband, Inc.*, 408 P.3d 465, 469 (Idaho 2017) (quoting *Stevenson v. Windermere Real Estate/Capital Grp., Inc.*, 275 P.3d 839, 842 (Idaho 2012)). "[T]o recover damages for unjust enrichment the complaining party must establish that the equities of the case would otherwise make it unfair for the recipient of the enrichment to receive a benefit without making compensation for the value of that benefit." *Radford v. Van Orden*, 483 P.3d 344, 362 (Idaho 2021), *as amended* (Mar. 22, 2021).

In *Lincoln Land*, the Idaho Supreme Court affirmed the trial court's dismissal of the plaintiff's unjust enrichment on the grounds that a third party, which leased plaintiff's property and then sublet a portion of the property to the defendant at below-market value, conferred the benefit on the defendant—not the plaintiff. 408 P.3d at 469-72. Similarly, in *Stevenson*, the Idaho Supreme Court affirmed the trial court's granting of summary judgment against the plaintiff after finding another party conferred the benefit on the defendant, not the plaintiff. *Stevenson*, 275 P.3d at 842. In *Stevenson*, the Court rejected the plaintiff's attempt to "cut out the middleman [that had conferred the benefit on the defendant] and directly recover from [the defendant] for unjust enrichment." *Id.*

**MEMORANDUM DECISION AND ORDER - 8**

In this case, as in *Lincoln Land* and *Stevenson*, Haarslev fails to show that it conferred a benefit on Muir and JLM. Instead, Haarslev alleges it "conferred a benefit on Muir and JLM *by paying IME's invoices*" (Dkt. 1 at ¶ 79), and then IME paid a portion of that payment it received from Haarslev to Muir and JLM. Thus, IME conferred the benefit on Muir and JLM, not Haarslev. Just as the plaintiffs in *Lincoln Land* and *Stevens* "could not cut out the middleman." Haarslev cannot cut out the middleman in this case—IME—and recover from Muir and JLM.

Haarslev's allegation that "JLM was also being paid directly by Plaintiff under separate purchase orders" does not save Haarslev's unjust enrichment claim because Haarslev fails to plead any facts suggesting it would be inequitable for JLM to retain the payments Haarslev paid it "under separate purchase orders." Haarslev does not allege the payments it made *directly* to JLM were not made in exchange for legitimate services JLM provided to Haarslev. As Haarslev has failed to allege facts demonstrating it conferred a benefit on JLM or Muir, *and* it would be inequitable for JLM or Muir to retain the benefit *Haarslev*—not IME—conferred, Haarslev's unjust enrichment claim must be dismissed.

E.     **Leave to Amend**

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court finds Haarslev may be able to remedy many of the deficiencies identified in this decision and accordingly grants Haarslev leave to amend its complaint.

**MEMORANDUM DECISION AND ORDER - 9**

## IV.  ORDER

**IT IS ORDERED that:**

1. Defendants' Motion to Dismiss (Dkt. 14) is **GRANTED** with leave to amend.

2. Plaintiff Haarslev is GRANTED leave to amend its complaint. Any amendment must be filed within thirty (30) days from entry of this order unless an extension is granted for good cause shown.

DATED: January 21, 2025

Amanda K. Brailsford
U.S. District Court Judge