UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HAARSLEV, INC, <br><br> Plaintiff, <br><br> v. <br><br> JEFF MUIR; JLM MANAGEMENT, LLC <br><br> Defendants. | Case No. 4:24-cv-00278-AKB <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants' Motion to Dismiss Haarslev's First Amended Complaint (Dkt. 34). The Court finds oral argument would not significantly aid its decision-making process and decides the motions on the parties' submissions. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed, the Court will grant in part and deny in part the motion to dismiss without leave to amend.

## I. BACKGROUND

The Court set forth the factual background for this case in its prior Memorandum Decision and Order (Dkt. 32). In brief, Plaintiff Haarslev, Inc., designs, manufactures, sells, and installs equipment for food, food by-products, and pet food industries (Dkt. 33 at ¶ 1). Haarslev employed Michael Chapple (Chapple) as the project manager on a manufacturing and installation project known as the DemKota Project, and he also worked on another project in Augusta, Georgia, known as the FPL Foods project (*id.* at ¶¶ 2–3, 45).

Defendant JLM Management, Inc., provides consulting and management services, and Defendant Jeff Muir is JLM's sole member and owner (Dkt. 14-1 at 2). Before working for

MEMORANDUM DECISION AND ORDER – 1

Haarslev, Chapple worked in Idaho and formed a connection with Muir through Muir's employment at various companies including Christensen Machine, Inc (CMI) (Dkt. 33 at ¶¶ 4, 6). In March 2022, CMI terminated Muir's employment for alleged misconduct (*id.* at ¶¶ 6–8).

Haarslev alleges that Chapple and Muir conspired to defraud Haarslev through various schemes involving inflated invoices from CMI and Industrial Metal Enterprises, LLC (IME). According to Haarslev, while Muir was employed at CMI, he altered invoices to increase amounts owed, causing Haarslev to pay for work that was not completed (Dkt. 33 at ¶¶ 13–21). Later, Chapple allegedly directed that IME increase its invoices to Haarslev by additional percentages, with portions of these inflated amounts being paid to Muir and JLM (*id.* at ¶¶ 22–50).

On January 21, 2025, this Court issued a Memorandum Decision and Order granting Defendants' motion to dismiss all claims and providing Haarslev leave to amend its complaint (Dkt. 32). On February 20, Haarslev filed its First Amended Complaint, adding a new fraud claim and dropping its tortious interference with contract claim (Dkt. 33). Defendants now move to dismiss all claims in the Amended Complaint (Dkt. 34).

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

MEMORANDUM DECISION AND ORDER – 2

Under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. In sum, to survive a 12(b)(6) motion to dismiss, the non-conclusory factual allegations, and reasonable inferences from those allegations, must state a claim to relief that is plausible on its face. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969, 972 (9th Cir. 2009).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether it "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union, Loc. 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citation modified).

### III.   ANALYSIS

**A.   Fraud (Count I)**

In Count I, Haarslev alleges Muir made false representations of material fact when it inflated CMI invoices, resulting in Haarslev paying the inflated amount (Dkt. 33 at ¶¶ 69–79). Defendants argue this new fraud claim is untimely and should be dismissed because the new claim exceeds the scope of the amendment the Court permitted in its decision granting leave to amend and because Haarslev did not otherwise seek leave of the Court under Rule 15(a) of the Federal

Rules of Civil Procedure to amend the pleadings to add new claims (Dkt. 34-1 at 9). Haarslev's argument misstates the Court's order, which merely granted Haarslev leave to amend its complaint (Dkt. 32 at 9–10). There was no limitation—express or implied—that leave was granted solely to address the deficiencies in its original complaint. Rather, the Court explained that it was granting leave to amend because it found Haarslev may be able to remedy many of the deficiencies identified in its decision (*id.* at 9). That it used this leave to allege a new claim does not automatically make the new claim improper.

Haarslev alleges facts supporting all of the elements of a fraud claim under Idaho law. Those elements include: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Aspiazu v. Mortimer*, 82 P.3d 830, 832 (Idaho 2003). Under Rule 9(b) of the Federal Rules of Civil Procedure, "the circumstances constituting fraud" must be pled "with particularity," meaning Haarslev must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation modified).

There is no dispute that the invoices were material; Muir knew the contents of the invoices; Muir intended Haarslev to rely on the invoices; Haarslev in fact relied on them; Haarslev was entitled to rely thereon; and Haarslev suffered approximately $532,282.00 in damages. Thus, the Court finds elements three, four, five, seven, eight, and nine are met. Defendants, however, take issue with the first, second, and sixth elements of fraud (Dkt. 34-1 at 12). First, Defendants argue

**MEMORANDUM DECISION AND ORDER – 4**

that because Muir generated and reviewed the CMI invoices in his capacity as a CMI employee, they were not his representations (*id.* at 11). In its complaint, Haarslev alleges Muir "altered the CMI invoices [] by increasing the amounts owed so that Haarslev would pay for more than it received" (Dkt. 33 at ¶ 70). While it acknowledges that Muir was a CMI employee during his alleged fraudulent conduct, it also notes that (1) Muir used the inflated invoices to pay his salary and commission (*id.* at ¶ 78); and (2) CMI terminated Muir for misconduct (*id.* at ¶¶ 6–12). Whether or not Muir was actually acting in his capacity as a CMI employee is not relevant at the motion to dismiss stage. Haarslev has sufficiently pled facts that reasonably infer that Muir exceeded the scope of his employment with CMI when he allegedly altered the CMI invoices. Thus, the first element is satisfied.

Defendants argue the second element—falsity—is not satisfied because Haarslev "does not allege what the invoice amounts were supposed to be; how they were allegedly inflated; or how this alleged inflation was improper" (Dkt. 34-1 at 12). Haarslev does, however, allege that it paid four invoices to CMI relating to Purchase Order #15795 for forty-three screw conveyors, one raw material bin, one feed bin, platforms, stairs and miscellaneous chutes totaling $1,132,281.61 (Dkt. 33 at ¶¶ 13–14). Yet, all it received was one of the forty-three screw conveyers (*id.* at ¶ 19). It also describes a scheme wherein "CMI would prepare an invoice, then Muir would revise the invoice to increase the total price before sending the invoice to Chapple," who would subsequently approve it (*id.* at ¶¶ 15–16). Haarslev further alleges that Muir's inflated invoices resulted in Haarslev paying over $532,282.00 in goods it never received (*id.* at ¶ 17). These alleged facts support a reasonable inference that the four invoices did not accurately reflect the production progress. Accordingly, Haarslev has sufficiently pled facts indicating that the invoices were false or at a minimum misleading.

**MEMORANDUM DECISION AND ORDER – 5**

Finally, Defendants maintain that Haarslev cannot satisfy the sixth element—hearer's ignorance of its falsity—because the involvement of one of its own employees in the scheme imputes knowledge on the employer (Dkt. 34-1 at 11). Generally, an agent or employee's knowledge is imputed on the principal when the knowledge is acquired in the course of his employment. *Temperance Ins. Exch. v. Coburn*, 379 P.2d 1024, 1026 (Idaho 1963). That general rule, however, does not apply "when the agent is engaged in committing an independent fraudulent act upon his own account, and the knowledge sought to be imputed is of facts which relate to that act, and which, if communicated, would prevent the consummation of the fraud." *Smith v. Wallace Nat'l Bank*, 150 P. 21, 24 (Idaho 1915) (explaining that an agent's knowledge is not imputed to principal if agent exceeds his authority); *see also Temperance*, 379 P.2d at 1026 (noting the "general rule which imputes an agent's knowledge" does not apply when third party knows "the agent will not advise his principal"). "The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing." *Temperance*, 379 P.2d at 1026 (quoting *Mut. Life Ins. Co. of N.Y. v. Hilton-Green*, 241 U.S. 613, 623 (1916)). Here, Haarslev makes clear in its amended complaint that Chapple conspired with Muir to defraud Haarslev on the DemKota project by inflating the CMI invoices (Dkt. 33 at ¶¶ 2–3, 14–16, 20). Haarslev further alleges that it did not know that the invoices were false (*id.* at ¶ 74).

Based on these allegations, it can be reasonably inferred that Haarslev was not aware of Chapple's involvement in the invoice scheme and that, had it known, it would have attempted to "prevent the consummation of the fraud." *Smith*, 150 P. at 24. This inference is further bolstered by the fact that Haarslev has a separate case pending against Chapple in which it alleges that Chapple conspired with Muir to defraud Haarslev on this same project (Dkt. 35 at 6 n.1). To impute Chapple's knowledge onto Haarslev would likely weaponize the general rule into "a shield for

**MEMORANDUM DECISION AND ORDER – 6**

unfair dealing." *Temperance*, 379 P.2d at 1026. At this stage, it is sufficient that Haarslev alleges that it did not know the invoices were false.

Therefore, Haarslev has successfully alleged a claim for fraud.

B.   **Tortious Interference with Business Expectancy (Count II)**

Haarslev's second cause of action for tortious interference with business expectancy fails for substantially the same reasons identified in the Court's prior order. To state a claim for intentional interference with a prospective business expectancy, Haarslev must plead facts showing: "(1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted." *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081–82 (Idaho 2010).

Despite having leave to amend, Haarslev has still not alleged facts specifying any valid business expectancy that was terminated or that Defendants intentionally interfered to induce the termination of the expectancy by some measure beyond the alleged interference itself. Haarslev's attempt to address the deficiencies by alleging it had to refund money and "spend resources" to rectify relationships (Dkt. 33 at ¶¶ 89–90) does not address the fundamental requirement that a prospective business relationship be terminated.

Haarslev's allegations, when viewed as a whole, describe its employee, Chapple, making business deals that Haarslev now regrets and that led to disputes with customers. These allegations describe ordinary business realities and cost overruns—not tortious interference with business expectancy. *See Syringa Networks, LLC v. Idaho Dep't of Admin.*, 305 P.3d 499, 509 (Idaho 2013)

**MEMORANDUM DECISION AND ORDER – 7**

("The mere pursuit of one's own business purposes is not sufficient to support an inference of an improper motive to harm the plaintiff.").

Haarslev's reliance on *In re Ivie*, 587 B.R. 729 (Bankr. D. Idaho 2018), is misplaced. That case involved a defendant with knowledge of a continuing economic expectancy based on historical relationships and past projects. *id.* at 739. Here, Haarslev has not alleged such historical relationships or that Defendants had knowledge of any valid economic expectancy that was subsequently terminated. Therefore, the Court finds that Haarslev has failed to state a plausible claim for intentional interference with business expectancy.

### C.   Unjust Enrichment (Count III)

Haarslev's unjust enrichment claim suffers from the same fatal deficiency identified in the Court's prior order. To state a claim for unjust enrichment in Idaho, the plaintiff must allege "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Lincoln Land Co., LLC v. LP Broadband, Inc.*, 408 P.3d 465, 469 (Idaho 2017).

As this Court previously explained, a plaintiff cannot "cut out the middleman [that had conferred the benefit on the defendant] and directly recover from [the defendant] for unjust enrichment." *Stevenson v. Windermere Real Est./Cap. Grp., Inc.*, 275 P.3d 839, 842 (Idaho 2012). Despite having leave to amend, Haarslev has not cured this core deficiency. Haarslev continues to allege that "Haarslev conferred a benefit on [Defendants] by paying CMI and IME's invoices" (Dkt. 33 at ¶ 96), and that "Haarslev paid Muir's full year salary and commission twice, *through both CMI* ($46,153) *and IME* ($128,000)" (*id.* at ¶ 99) (emphasis added). These allegations demonstrate that CMI and IME—not Haarslev—conferred a benefit on Defendants.

MEMORANDUM DECISION AND ORDER – 8

Haarslev seemingly acknowledges this flaw but urges the Court to adopt Washington's "misleading act" exception to the middleman rule, which applies in unjust enrichment cases when the defendant is not merely an incidental beneficiary from a third-party transaction (Dkt. 35 at 8). It cites *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 741 P.2d 58 (Wash. Ct. App. 1987), and *In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, No. 09-2076, 2010 WL 2640237 (W.D. Wash. June 25, 2010), as support. Under that exception, a benefited third party may be liable under a theory of unjust enrichment if the "case involved some clear act of bad faith by the defendant resulting in the defendant's unjust enrichment at the plaintiff's expense." *Farwest Steel Corp.*, 741 P.2d at 65. In the absence of a decision by the Idaho Supreme Court addressing this question, the Court's task is to "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Nat'l Labor Rels. Bd. v. Calkins*, 187 F.3d 1080, 1089 (9th Cir. 1999) (citation modified).

The Idaho Supreme Court has not spoken directly on whether a defendant's improper conduct in securing a benefit conferred by another satisfies the requirement that plaintiff directly confer a benefit upon the defendant. On at least one occasion, however, it has addressed whether some conduct on behalf of the plaintiff may be sufficient to satisfy the requirement that the plaintiff confer the benefit on the defendant. *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 336 P.3d 802, 806 (Idaho 2014). In *Medical Recovery*, the benefit conferred to the third party was the product of a mistake, i.e., checks drawn from the account of another company (not a party to the case) were accidentally sent by that company to the defendant. *Id*. There, the Idaho Supreme Court noted that "it was not the effort of [the plaintiff] in [sending the checks] that conferred the benefit; it was ultimately [the other company's] mistake that resulted in

**MEMORANDUM DECISION AND ORDER – 9**

the benefit." *Id.* This case suggests that the Idaho Supreme Court may be open to adopting the misleading act exception to resolve the instant motion.

Applying the misleading act exception, Haarslev has sufficiently pled facts alleging Defendants engaged in fraudulent and misleading acts towards Haarslev to procure the CMI and IME invoices. For example, Muir allegedly "altered the CMI invoices [] by increasing the amounts owed so that Haarslev would pay for more than it received" (Dkt. 33 at ¶ 70). Additionally, Muir allegedly inflated IME invoices and then pocketed the markup (*id.* at ¶¶ 46–58). While CMI and IME were the companies that directly conferred a benefit to Defendants, it was Defendants' own misconduct that misled Haarslev into overpaying the invoices. Thus, under the Washington rule, Haarslev has sufficiently pled facts to establish an unjust enrichment claim.

The same result would be reached under *Medical Recovery Services* because the involvement of Haarslev's own employee in the scheme led to CMI and IME conferring the benefit. As noted above, Haarslev's amended complaint clearly alleges that Chapple conspired with Muir to defraud it on the DemKota project by inflating the CMI and IME invoices (Dkt. 33 at ¶¶ 2–3, 14–16, 20, 44, 47, 49). Arguably, Chapple's efforts to approve the inflated invoices ultimately led to the invoices being paid to CMI and IME. Whether the fact that Chapple was acting outside the scope of his employment, and thus not on Haarslev's "behalf," alters the analysis is a question for another day. For now, Haarslev has alleged facts sufficient to demonstrate unjust enrichment.

D.     **Leave to Amend**

Regarding Haarslev's tortious interference of business expectancy claim, the Court finds that further leave to amend would be futile. Haarslev has now had two opportunities to state a viable claim but has been unable to do so. The fundamental deficiencies in Haarslev's claim—

particularly the failure to identify any terminated business expectancy—cannot be cured by further amendment given the nature of the underlying transactions alleged. Under these circumstances, the Court concludes that further amendment would not serve the interests of justice.

## IV.    ORDER

**IT IS ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 34) is **GRANTED in part and DENIED in part**.

2. Count Two of Haarslev's First Amended Complaint is **DISMISSED WITHOUT LEAVE TO AMEND**.

DATED: February 18, 2026

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER – 11